[Civ. No. 31208. Fourth Dist., Div. One. June 14, 1984.]

CITY OF SAN DIEGO, Plaintiff and Appellant, v.
JAMES J. HOLODNAK, as Acting Auditor and Controller, etc.,
Defendant and Respondent.

COUNSEL

John W. Witt, City Attorney, Janis Sammartino Gardner, Deputy City Attorney, Stradling, Yocca, Carlson & Rauth, Richard C. Goodman, Thomas P. Clark, Jr., Barney A. Allison, Freilich & Leitner, Freilich, Leitner & Carlisle, Robert H. Freilich, Martin L. Leitner, Neil R. Shortlidge and Wayne M. Senville for Plaintiff and Appellant.

Hahn & Cazier and Donald R. Worley for Defendant and Respondent.

OPINION

**BUTLER, J.**—The City of San Diego appeals a judgment denying its petition for a peremptory writ of mandate to require James Holodnak, former acting auditor and controller of San Diego, to release funds collected from North City West landowners.[1]

I

Seeking to prevent uncontrolled suburban sprawl, San Diego adopted its progress guide and general plan for controlled, orderly and rational growth. Before any subdivision maps for new developments are recorded, the general plan requires San Diego to adopt a financing plan for developers to pay for public facilities a new community will need.

---

[1]The present auditor and controller is Edward Ryan, who has continued refusing to expend such funds.

North City West is a new community being built in the northwest corner of San Diego, directly east of Del Mar and Interstate 5. It contains about 4,200 acres which the North City West Community Plan[2] estimates will be developed into about 14,000 homes, a town center and commercial and industrial complexes.

In April 1982, San Diego prepared the North City West Public Facilities Financing Plan. It provides for use of several financing methods which, consistent with the general plan, requires the developers of North City West to pay for North City West's public facilities. Part of the financing plan calls for financing public facilities by using "Facilities Benefit Assessments" (FBA).

The FBA is a method of spreading the cost for certain public facilities among the properties benefited by those facilities. A formula is used in which each parcel is assigned a number (equivalent dwelling unit factor (EDU)) which represents the anticipated need parcels with the same land use will have for each facility financed. The EDU is then used to apportion estimated costs for the various facilities among the parcels in the development.

In August 1980, San Diego adopted the FBA procedural ordinance (ordinance No. 0-15318) which allows San Diego to: designate "areas of benefit" to be assessed for public improvements; apportion costs for the improvements among the parcels within the areas of benefit; and levy the assessments against each parcel (constituting a lien on it) which the owner must pay in whole or in part when applying for a building permit. The money collected is to be placed in separate city accounts for use only for the public improvements for which the assessments are levied. In May 1982, San Diego passed Resolution R-256462, adopting the North City West Public Facilities Financing Plan, designating most of North City West as an area of benefit and requiring the public facilities mentioned above to be financed by the FBA.

In July 1982, San Diego adopted Resolution R-256841, asking Holodnak to release funds collected from North City West landowners for expenses incurred in connection with preparation and administration of the North City West area of benefit. Holodnak refused. San Diego then asked the court for a writ ordering Holodnak to release the funds. Holodnak opposed the writ, alleging the FBA was a "special tax" adopted by San Diego without approval of two-thirds of the voters as required by California Constitution,

---

[2]Adopted in 1975, but approved after adoption of the general plan in 1979.

article XIII A, section 4,[3] and alternatively, the assessment allocations were inequitable and violated equal protection.

## II

After hearing San Diego's motion for a peremptory writ of mandate, the court found the FBA was a special tax adopted in violation of article XIII A, section 4, because: (1) the FBA "bears the indicia" of a special tax and does not meet the requirements of a special assessment; (2) the FBA is premised on " 'area development responsibility' " rather than on special benefit to the assessed property, which is required for valid special assessments; (3) the facilities financed by the FBA provide benefits to land not specially assessed and are the kind usually financed by the city's general revenues; (4) the FBA, unlike special assessments, places a present lien on property to pay for future improvements; and, (5) the FBA does not contain bond issue financing and delayed payment options which traditionally accompany special assessments.

## III

*J. W. Jones Companies* v. *City of San Diego* (1984) *ante,* page 745 [203 Cal.Rptr. 580], filed this date and certified for publication, addresses and answers the contentions of Holodnak and the findings of the court here except as noted below. We adopt and incorporate by reference paragraphs I, II and IV through VI of that opinion excluding only the last sentence of paragraph VI on disposition.

## IV

In *Jones,* the North University City FBA financed only street improvements and parks. ■ Public facilities to be financed by the North City West FBA include construction of a water line, developing a community and neighborhood parks, constructing a public library branch, a park and ride facility and a fire station and widening the Del Mar Heights Bridge over Interstate 5. These additional facilities confer a direct benefit upon the North City West properties within the area of benefit subject to the FBA assessment.

The water line and sewer pump plant expansion provide basic services and necessarily increase the value of the properties so enabled to be devel-

---

[3]California Constitution, article XIII A, section 4, reads: "Cities, counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, except ad valorem taxes on real property or a transaction tax or sales tax on the sale of real property within such City, County or special district."

oped. (*County of Fresno* v. *Malmstrom* (1979) 94 Cal.App.3d 974, 978 [156 Cal.Rptr. 777].) The neighborhood and community parks will specially benefit the North City West properties because of their location in North City West. While the general public will be able to use the parks and benefit by having parkland available within the city, the parks will be of particular benefit to the immediately surrounding North City West community (see *Associated Home Builders, etc., Inc.* v. *City of Walnut Creek* (1971) 4 Cal.3d 633, 640, fn. 6 [94 Cal.Rptr. 630, 484 P.2d 606, 43 A.L.R.3d 847], where the Supreme Court noted, "[o]rdinarily if land within the subdivision is dedicated for a park it may be assumed that those who will reside in the subdivision will make primary use of the park.").

The same can be said of the park and ride facility. While persons outside North City West will be able to use the facility, and the community at large will benefit by the decrease in automobile use and attendant decrease in traffic and pollution, the main beneficiaries will be the residents in the immediate vicinity who will regularly use the facility and whose property value can only be enhanced by the property's proximity to a means of mass transportation. So, too, the bridge widening confers a direct benefit to the assessed properties by affording expanded ingress and egress occasioned by the increase in traffic anticipated by the development.

The public library will specially benefit North City West residents because they will primarily use it. While the library will serve the community at large by increasing the general availability of library services, the convenience of having a local branch nearby and having access through the local branch to the city-wide library system will be of special benefit to North City West residents.

Similarly, the fire station will primarily benefit North City West properties. Notwithstanding dicta in *Solvang Mun. Improvement Dist.* v. *Board of Supervisors* (1980) 112 Cal.App.3d 545, 557 [169 Cal.Rptr. 391], intimating fire stations cannot properly be financed by special assessment to avoid the requirements of article XIII A, section 4, fire stations do specially benefit the properties within their area of service and such special benefit exceeds the benefit the city at large gains by having additional fire stations within its limits. Therefore, fire stations can be financed by special assessment. (See Gov. Code, § 50078 et seq., specifically authorizing financing fire suppression services by special assessment.)

San Diego's determination of special benefit to North City West as to these improvements is supported by the record and is conclusive. The superior court erred in substituting its judgment for that of the city council.

(*White* v. *County of San Diego* (1980) 26 Cal.3d 897, 904 [163 Cal.Rptr. 640, 608 P.2d 728].)

V

The judgment is reversed, with directions to grant the peremptory writ of mandate as prayed.

Brown (Gerald), P. J., and Cologne, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 23, 1984. Lucas, J., was of the opinion that the petition should be granted.