[No. C002305. Third Dist. Feb. 14, 1989.]

CITY OF SACRAMENTO, Plaintiff and Respondent, v.
CHARLES H. DREW, Defendant and Appellant.

**COUNSEL**

Ronald A. Zumbrun, John H. Findley and Sharon L. Browne for Defendant and Appellant.

Littler, Mendelson, Fastiff & Tichey, Bruce J. Sarchet and Ann M. Freers for Plaintiff and Respondent.

## OPINION

**BLEASE, J.**—Charles Drew, represented by Pacific Legal Foundation, appeals from an order denying his motion for an award of attorney fees under Code of Civil Procedure section 1021.5. Drew prevailed upon summary judgment as a defendant in an action brought by the City of Sacramento (City) to declare the validity of a special tax assessment district to be formed to raise the unfunded construction costs for three elementary schools. The trial court denied the fee award for two reasons. The district "presumably" would have been declared invalid regardless of Drew's participation in the action. Drew "belatedly" raised the prevailing legal theory. Drew claims that neither ground warrants denial of a fee award under section 1021.5.

We agree and shall reverse the trial court's order.

### FACTS AND PROCEDURAL BACKGROUND

The Sacramento City Unified School District (District) determined that future population growth within the City would require construction of three elementary schools in an area known as the Pocket Area. The District had funds for one school. The City and the District were advised by counsel that the City had authority to form a district to assess the unfunded costs of constructing the schools under the provisions of the Streets and Highways Code. The City passed a resolution of intention to go forward with this proposal under the authority of the Municipal Improvement Act of 1913 (Sts. & Hy. Code, § 10000). Drew sent a letter of protest to the City, which was noted at a hearing preceding the resolution, claiming: (1) the construction of a public school is not authorized by the Municipal Improvement Act of 1913; (2) the assessment is a special tax under California Constitution, article XIIIA (Proposition 13) and may not be imposed, as here, without the approval of a vote of the electorate.

The City brought a validation proceeding (Code Civ. Proc., § 860) to determine whether the Municipal Improvement Act of 1913 authorized the assessment scheme and whether bonds could be issued under the Improvement Bond Act of 1915 (Sts. & Hy. Code, § 8500). Drew filed an answer to the complaint, as a person interested in the matter (Code Civ. Proc., § 861.1), controverting the City's allegations. As an affirmative defense he tendered the additional claim that the assessment scheme contravenes Proposition 13.

Drew filed a motion for summary judgment on the latter ground. He argued that, pursuant to *Solvang Mun. Improvement Dist.* v. *Board of Su-*

*pervisors* (1980) 112 Cal.App.3d 545, 553 [169 Cal.Rptr. 391], the assessment is in reality a tax levied for general revenue for a general public improvement and is barred for noncompliance with the two-thirds vote requirement of Proposition 13. ■ ■ ■ ■ The City replied, relying upon *City of San Diego* v. *Holodnak* (1984) 157 Cal.App.3d 759 [203 Cal.Rptr. 797], which held that a public library and a park-and-ride facility were proper subjects of special assessments without the prohibitions of Proposition 13.[1]

At the hearing on the motion the City argued that consideration of the issue whether the assessment was a special assessment was foreclosed on procedural grounds and that the only viable issue was whether the assessment acts could be used to construct schools. Alternatively it argued that the trial court should view the construction of the schools as the proper subject of a special assessment district under the reasoning of *Holodnak, supra.* Drew replied that there was no procedural bar and that Proposition 13 would be eviscerated if that were the case.

The trial court asked for further briefing: (1) Was the technical procedural claim of the City superseded by enactment of Proposition 13; (2) was Drew's counter argument concerning inapplicability of that claim correct; (3) were prior statutory determinations concerning appropriateness of special assessments for certain purposes superseded by Proposition 13; (4) was the court to consider the intentions of the District regarding neighborhood attendance at the schools with respect to the question of direct or local benefit and (5) was the assessment distinguishable from development fees for school impact upheld in *Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.* (1985) 39 Cal.3d 878 [218 Cal.Rptr. 303, 705 P.2d 876]. The matter was continued to accomplish the briefing.

In the City's reply brief it again asserted that the sole issue was "whether authority exists [to] use the assessment acts to construct public school buildings, where the construction of such facilities is not specified in so many words in the assessment legislation." It pointed to *Holodnak, supra,* and oddly enough, quoted a snippet from a companion case, *J. W. Jones Companies* v. *City of San Diego* (1984) 157 Cal.App.3d 745 [203 Cal.Rptr. 580], which upheld the use of assessments on undeveloped property for growth impact costs under San Diego's authority as a charter city. That

---

[1] The distinction between a property tax and a special assessment is that the former is levied to pay for general expenditures deemed to benefit all property owners within the taxing district while the latter " 'is a charge imposed on particular real property for a local public improvement of direct benefit to that property . . . .' " (*San Marcos Water Dist.* v. *San Marcos Unified School Dist.* (1986) 42 Cal.3d 154, 162 [228 Cal.Rptr. 47, 720 P.2d 935], quoting from *Solvang, supra,* 112 Cal.App.3d at pp. 552-553.)

quotation contrasted the flexibility of San Diego's action under its charter with the statutory authority upon which the City relied in this case: "The narrow strictures of general law concepts of financing public facilities as embedded in acts such as the Improvement Act of 1911 or the Municipal Improvement Act of 1913 do not accommodate the dynamics of explosive growth in sunbelt cities." (*Id.,* at pp. 757-758.)

Drew's closing brief picked up the City's statutory gauntlet and argued that the language of the assessment acts, upon which the City had relied, did not permit it to finance school construction. He argued: (1) the property to be improved was not owned by the City and hence was outside the list, in Streets and Highways Code section 5101, of the kinds of work permitted under the Improvement Act of 1911 and (2) Streets and Highways Code section 10102 indicates that the Municipal Improvement Act of 1913 only permits works and improvements of a local nature and which does not include public schools.

When the motion for summary judgment again came on for further hearing the trial court said it had requested an appearance for oral argument because Drew had "raised an issue in [his] reply brief which has not previously been raised in this motion, and that is whether or not an assessment for this purpose, for the planned purpose is authorized by the legislation upon which the City of Sacramento relies." Counsel for both parties agreed the issue was not raised in the original moving papers. The trial court said that the statutory issue would have to be resolved prior to the constitutional issue, and another continuance for further briefing was had.

Following that briefing and further hearing the trial court decided that school construction was not "of a local nature" within the meaning of Street and Highways Code section 10102 and that an assessment district for that purpose could not be formed under the Municipal Improvement Act of 1913. The trial court said that school construction was not a kind of work permitted under Street and Highways Code section 5101 and the assessment scheme could not be upheld under the Improvement Act of 1911. The trial court granted Drew's motion for summary judgment on these grounds. Judgment was entered accordingly. No appeal was taken by the City and we have no occasion to consider the merits of the decision.

Drew filed a motion for attorney fees under Code of Civil Procedure section 1021.5. It was denied. The court said: "I would probably conclude that all of those criteria of the statute have been met, that is [section 1021.5, subdivisions (a) - (c)] and the general requirement that the action resulted in the enforcement of an important right affecting the public interest." From the comments of the court at the hearing, it appears the motion was denied

for two reasons. First, Drew had not raised the issue upon which he prevailed: "The only manner in which Mr. Drew can claim credit for his victory in this lawsuit—and I don't—and I don't deny that he prevailed in this lawsuit in the sense that he—a judgment was issued in his favor and against the City. But the only manner in which—the way in which he came to be the prevailing party was that he responded to the court's request to brief an issue which he had never raised. And after that issue was briefed the court decided that the position that Mr. Drew had taken at the invitation of the court was well taken and—and—and ruled in Mr. Drew's favor."

Second, the action was brought as a validation action by the City and might have been resolved the same way regardless of Drew's participation: "Presumably had Mr. Drew not appeared in this proceeding the court would have arrived at the same result. And I—I say that mindful of—I use the word presumably advisedly because I'm not saying as a matter of fact that the court would have. That would be sort of idle speculation on my part."

Drew sought reconsideration of the order denying attorney fees. He challenged the trial court's premise that he had not raised the issue of statutory authority, asserting that he had raised the issue in the proceedings prior to the lawsuit, in the answer and in his reply brief of September 22, 1986. Drew supported the claim with references to documents in the superior court's file and a transcript of the prior hearing at which the trial court acknowledged that Drew had raised the issue. The trial court denied the motion by minute order, noting: "Motion denied. The movant's motion for summary judgment was granted, upon a basis not presented by the original moving papers, not raised prior to the initial hearing on the motion, and belatedly raised on the eve of the continued hearing on the motion."

Thereafter, on April 10, 1987, the City prepared and the trial court executed an order denying the motion for reconsideration, reiterating the grounds stated in the minute order. For some unstated reason, the City prepared and on April 13, 1987, the trial court executed an additional order, denying the original motion for attorney fees. That order gives the following grounds for denial. "1. That the court is exercising its discretion which it has under Code of Civil Procedure section 1021.5 on the basis that Defendant Drew did not raise or present the issue upon which the matter was ultimately decided; [¶] 2. That the court is exercising its discretion under Code of Civil Procedure section 1021.5 to deny fees on the basis that the nature of a bond validation proceeding does not establish the necessity of a particular litigant's appearance, and therefore Defendant Drew's appearance was not necessary to the litigation, and the court presumably

would have arrived at the same result in the absence of any appearance for the opposition."

This appeal followed.

DISCUSSION

I

Drew claims that the grounds upon which the trial court acted are not grounds upon which attorney fees may be denied under Code of Civil Procedure section 1021.5 (hereafter section 1021.5). The parties identify the grounds as: (1) the court would "presumably" have reached the same result on the merits without Drew's participation; and (2) Drew "belatedly" raised the winning legal theory.[2]

Section 1021.5 establishes the criteria for an award of attorney fees. "Upon motion, a court may award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

█ Section 1021.5 codifies the " 'private attorney general' attorney fee doctrine that had been developed in . . . prior judicial decisions." (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200].) The doctrine evolved in federal case law but was repudiated as federal law in *Alyeska Pipeline Co.* v. *Wilderness Society* (1975) 421 U.S. 240 [44 L.Ed.2d 141, 95 S.Ct. 1612]. In *Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303] (*Serrano III*) the court invoked the pre-*Alyeska* authorities in awarding attorney fees pursuant to the equity authority of state law. This "equitable discretion" was codified in section 1021.5. (*Woodland Hills Residents Assn., Inc., supra,* p. 938.) The court said: "Because in framing the provisions of section 1021.5 the Legislature drew heavily upon the pre-*Alyeska* federal decisions, we

---

[2] These grounds are drawn from the trial court's remarks explaining its denial of the motion for reconsideration of its decision denying attorney fees. Implicit in these grounds is the retraction of the assertion that Drew failed to initiate the legal theory upon which he prevailed. The question whether the failure to originate the prevailing legal theory justifies the denial of a fee award is not before us.

believe that such authorities—while no longer viable in the federal realm—will often be helpful and reliable guides in interpreting the various provisions of the California statutes." (*Id.,* at p. 934, fn. omitted.) Section 1021.5 thus provides the criteria for and hence the measure of the equitable discretion it confers upon the courts to award attorney fees.[3]

## II

An appellate court may reverse a trial court decision denying attorney fees under section 1021.5 for a prejudicial abuse of discretion. (See, e.g., *Baggett* v. *Gates* (1982) 32 Cal.3d 128, 142-143 [185 Cal.Rptr. 232, 649 P.2d 874].) The City advances as the sole test of such an abuse whether the trial court's action was whimsical, arbitrary, or capricious. (See *Hurtado* v. *Statewide Home Loan Co.* (1985) 167 Cal.App.3d 1019, 1021-1026 [213 Cal.Rptr. 712]; see also 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 277, pp. 287-289.) This pejorative boilerplate is misleading since it implies that in every case in which a trial court is reversed for an abuse of discretion its action was utterly irrational. Although irrationality is beyond the legal pale it does not mark the legal boundaries which fence in discretion. (See *Hurtado, supra,* 167 Cal.App.3d at pp. 1021-1026.)

Very little of general significance can be said about discretion. " 'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown. [Citation.]' " (*Westside Community for Independent Living, Inc.* v. *Obledo* (1988) 33 Cal.3d 348, 355 [188 Cal.Rptr. 873, 657 P.2d 365], citing to 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 244.) The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion. (See *Hurtado, supra,* 167 Cal.App.3d at p. 1022.) If the trial

---

[3] The statutory criteria of section 1021.5 are qualified by the permissive "may," suggesting that the statute delegates authority to deny attorney fees in special circumstances notwithstanding that the criteria are found to apply. (See generally, *Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 633-639 [186 Cal.Rptr. 754, 652 P.2d 985] ("special circumstances").) However, the contrary conclusion is supported on the grounds that section 1021.5 codifies whatever equitable discretion is delegated to the courts and that California courts have uniformly evaluated fee awards pursuant to the measure "whether or not the statutory criteria have been met." (*Baggett* v. *Gates, supra,* 32 Cal.3d at p. 142; see Cal. Attorney's Fees Award Practice (Cont.Ed.Bar 1982) §§ 3.4-3.5 and cases cited therein; see also *Schmid* v. *Lovette* (1984) 154 Cal.App.3d 466, 473-475 [201 Cal.Rptr. 424]; but see *Bartling* v. *Glendale Adventist Medical Center* (1986) 184 Cal.App.3d 97, 104 [228 Cal.Rptr. 847], directing a trial Court to consider a potential claim of special circumstances.) Accordingly, we read "may" in section 1021.5 as simply signifying that a court has discretion to act *within* the criteria of section 1021.5.

court is mistaken about the scope of its discretion, the mistaken position may be "reasonable", i.e., one as to which reasonable judges could differ. (See, e.g., the majority and dissenting opinions in *Baggett v. Gates, supra,* 32 Cal.3d 128.) But if the trial court acts in accord with its mistaken view the action is nonetheless error; it is wrong on the law.

The legal principles that govern the subject of discretionary action vary greatly with context. (See *Hurtado, supra,* 167 Cal.App.3d at p. 1023.) They are derived from the common law or statutes under which discretion is conferred. Here the principles are embodied in section 1021.5. At issue is the construction of the statute, a question of law. The pertinent question is whether the grounds given by the court for its denial of an award are consistent with the substantive law of section 1021.5 and, if so, whether their application to the facts of this case is within the range of discretion conferred upon the trial courts under section 1021.5, read in light of the purposes and policy of the statute. With that in mind we turn to the grounds advanced by the trial court for its decision in this case.

### III

#### A.

■■■ The trial court denied the fee award in part because the result sought by Drew "presumably" would have been reached regardless of his participation in the litigation. The City claims that this variety of causal test of entitlement is sanctioned by the statutory criterion of "necessity . . . of private enforcement . . . ." The claim is doubly flawed.

First, it is predicated upon the incorrect factual assumption that Drew did not bring about the enforcement of an important right affecting the public interest. The trial court made no such finding; indeed, for reasons we later advance, such a finding would be unwarranted on this record.

Second, the statutory requirement of "necessity . . . of private enforcement" addresses the issue of the comparative availability of *public* enforcement, not the causal relationship between the claimant's action and the result. It derives from *Serrano III, supra,* 20 Cal.3d at pages 44-45. (See *Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 934, which said: "The similarity of the criteria enumerated in *Serrano III* and in section 1021.5 is by no means coincidental." This observation is predicated upon *La Raza Unida* v. *Volpe* (N.D.Cal. 1972) 57 F.R.D. 94, 101, and is attributed to a law review comment, *Court Awarded Attorney's Fees and Equal Access to the Courts* (1974) 122 U.Pa.L.Rev. 636, 669-671 [*Equal Access*].) (*Serrano III* at p. 45.) The law review comment explains

that the " '[n]ecessity of private enforcement,' . . . looks to the adequacy of *public* enforcement and seeks economic equalization of representation in cases where private enforcement is necessary. Where suit is brought against governmental agencies and officials, the necessity of private enforcement is obvious. In such situations private citizens alone must 'guard the guardians' and the disparity in legal resources is likely to be greatest." (*Equal Access,* at p. 671, italics added.) This is the way the criterion has been construed in California case law. (See, e.g., *Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 941; also see, e.g., *Harbor* v. *Deukmejian* (1987) 43 Cal.3d 1078, 1103 [240 Cal.Rptr. 569, 742 P.2d 1290]; Cal. Attorney's Fees Award Practice, *supra,* § 3.10.)

Thus, if there is a public attorney general available to enforce the important right at issue there is no utility in inducing a private attorney general to duplicate the function.

In this case there is no public attorney general available to litigate the issue of the validity of the assessment unless the City or the court fulfills that role. The City is ill-suited for the role because it advocates an outcome contrary to the claimed public interest. Casting the court as the public attorney general is foreign to our system of adversary litigation. Because the "necessity . . . of private enforcement" has to do with the *absence* of a *public* advocate it has nothing to do with the "causal" relationship between the efforts of the private attorney general and his success in the lawsuit.

### B.

Section 1021.5 does contain a causal requirement, whether the "action", in which the claimant to fees was a "successful" party, "resulted in the enforcement of an important right affecting the public interest . . . ." This provision is the statutory source of the case law on causality. (See, e.g., *Westside Community for Independent Living, Inc.* v. *Obledo, supra,* 33 Cal.3d at p. 352 [Westside], *Grimsley* v. *Board of Supervisors* (1985) 169 Cal.App.3d 960, 967 [213 Cal.Rptr. 108].) "[I]n order to justify a fee award, there must be a causal connection between the lawsuit and the relief obtained." (*Westside, supra,* at p. 353.)

The nature of that causal relationship is specified by the statute. It is the "action" which must "result in" the enforcement of the "right affecting the public interest . . . ." The causal relationship must be such that the result would not have occurred but for the *action* in which the claimant was a successful party. That presupposes that the claimant in general "sought" the relief which constitutes enforcement of the right; that the action was a " '*catalyst* motivating [the public entity] to provide the primary relief sought

. . . .' " (*Westside, supra,* 33 Cal.3d at p. 353 [citation omitted].) The claimant must be a "successful party" to the action, but this says nothing as such about the worth of the party's legal contribution. Rather, a "plaintiff will be considered a 'successful party' where an important right is vindicated 'by activating defendants to modify their behavior.' " (*Ibid.*) Since the statutory measure is whether the action (in fact) produced (caused) such a result, the value of the claimant's legal contribution to that result is not the measure of causality. The worth of the legal contribution is not excluded from consideration under the statute but properly appears only in the determination of the *amount* of fees.

Drew's participation in the validation action was a cause of the successful outcome of the litigation.[4] The trial court made no contrary finding.

The trial court reasoned: "But if Mr. Drew had not raised . . . the issue as to whether or not these assessments were statutorily authorized it may well be that someone else would have. And in any case presumably the court could not have entered a judgment in favor of the plaintiff even if no one appeared in this proceeding without the plaintiff presenting a prima facie case at some sort of default hearing forum satisfying the court that— that—that the City did have the statutory authority under the Street[s] and Highways Code to impose these assessments. And had the court been as well advised in the ultimate proveup forum as it turned out to be advised in light of all the briefs filed by the parties on the issue, the court presumably would have arrived at the same result and would have denied this complaint by the City—or this petition by the City even in the absence of any appearance by anyone. [¶] At least that's what should have happened. Whether as a practical matter that would have happened—as I say I'm not—I'm not claiming—I'm not claiming that as a matter of fact that would have happened because that's some—that's—that involves a lot of speculation."

It is apparent from these remarks that the trial court did not conclude that the same result would have been reached without Drew's efforts. Indeed, the court accurately noted that the finding the City claims was made would be fraught with "a lot of speculation." Speculation does not support an inference.

---

[4] At this juncture the City claims that the legal result was inevitable thereby suggesting that Drew's participation was unnecessary and did not cause the remedy obtained. That claim is false for reasons advanced in the text. In any event the claim rings hollow when advanced by an opposing party who, having lost, claims that its "failure" to prevail was inevitable. Indeed, the argument is not legally cognizable. (See Evid. Code, § 623.) "[W]e join those judges who have observed that government 'cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.' " (*Serrano* v. *Unruh, supra,* 32 Cal.3d at p. 638, quoting with approval from *Copeland* v. *Marshall* (D.C. Cir. 1980) 641 F.2d 880, 904.)

The result sought by Drew could have been reached regardless of his endeavors by three routes. ▮▮ First, as the trial court suggested, one of the defendants other than Drew could have driven home the statutory argument. This cannot be the basis for denying an award to the party who did carry the argument. If so the presence of multiple parties aligned with the prevailing party who is seeking fees could always defeat a claim for attorney fees. This would reward passivity and undercut the policy of section 1021.5.

The second prospect is that the "unsuccessful" party might see the wisdom of the legal argument contrary to its position and renounce its effort or rescind its action. The practical likelihood of such result, especially when, as here, counsel for that party has pitched his tent on the opposite ground, is slight. Moreover, it is not fair or just to allow the losing party to raise such a claim. (Fn. 4, *ante.*) Finally, it is possible that the trial court might, on its own initiative, identify the dispositive argument, conduct the necessary research, and produce the correct result without assistance. This scenario is at least a factual possibility in validation proceedings since, as the trial court noted, if no one opposed the complaint seeking validation the government entity would be required to prove up its case. (See Code Civ. Proc., § 585.) However, in practice, it is unlikely that a trial court would independently probe latent defects in a case in which no property owner appeared in opposition. ▮▮ The focus of a default hearing is factual. (See, e.g., 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, §§ 238-239, p. 208.) Had this case been conducted as a default matter, the trial court likely would have been tendered evidence that all of the procedures required for an assessment district had been complied with, along with a cursory ex parte assurance that the enterprise was lawful. It is not likely that such a proceeding would have rocked the City's boat.

Equally important is the fact that the contrary assumption goes against the grain of the policy underlying section 1021.5. The statute seeks to induce persons to shoulder a burden disproportionate to their personal financial stake in order to ensure the vindication of important public rights that might otherwise be disregarded. It is inconsistent with this policy to defeat the expectations engendered by the statutory inducement with the claim that advocates are unnecessary in any but obvious circumstances of inevitable failure. A prospective private attorney general should not have to rely on the prospect that the court will do the right thing without opposition.

If the court does not intervene on its own initiative the important right affecting the public interest goes down the drain. Even if a litigant could foresee that two times out of three his intervention would be unnecessary,

indulging such a probabilistic view of causality would result in undermining important rights affecting the public interest one time out of three. That outcome is not in keeping with the purposes of section 1021.5. The policy, simply stated, is one of: "rewarding the effectuation of significant policy . . . ." (*Serrano III, supra,* 20 Cal.3d at p. 45, fn. 16.)

For these reasons of practicality and policy we hold that on this record it is impermissible to imply that the same result would have been reached regardless of Drew's efforts.

■ These considerations also impel rejection of an analogous argument. The City argues that a section 1021.5 award is inappropriate in a *validation action* brought by a public entity because the entity is responsible for the adjudication benefiting the public and should be rewarded for taking the initiative. Such a public enforcement precludes the necessity of private enforcement. The same rejoinder obtains. In a validation action the City does not come before the court as a disinterested supplicant seeking legal advice, it comes as an advocate, with an axe to grind, seeking endorsement of its action, doubtless in order to make its bonds saleable. A public entity cannot preempt section 1021.5 by a first strike when the prospect of litigation looms.

When a party joined as a defendant successfully pursues a cross-complaint that meets the requirements of section 1021.5, the initial appellation of defendant does not stand in the way of an award. (Cf. *Wallace v. Consumers Cooperative of Berkeley, Inc.* (1985) 170 Cal.App.3d 836 [216 Cal.Rptr. 649].) A prevailing defendant who meets the criteria of the statute is entitled to an award even without a cross-complaint. (*County of San Luis Obispo* v. *Abalone Alliance* (1986) 178 Cal.App.3d 848, 869 [223 Cal.Rptr. 846].) The core of a validation action is a declaration of rights between disputing parties. When the defendant prevails in such an action his claim of right is vindicated. The application of section 1021.5 does not turn upon the form or initiation of the litigation and we discern no basis consistent with its policy for upholding such ground of denying an award of attorney fees.

For all of the foregoing reasons we conclude that a denial of an attorney fee award under section 1021.5 cannot be upheld on the stated ground that the same result "presumably" would have been reached regardless of Drew's participation.

### IV.

■ That leaves the argument that the prevailing statutory claim of the invalidity of the assessment district was advanced "belatedly." The City

asserts that this is a proper ground for denial of an award because Drew's conduct of the litigation obfuscated the issue upon which the case was decided and thereby prolonged the case and its attendant expense. Given the criteria of section 1021.5, the argument is not persuasive.

■ "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." (*Hensley* v. *Eckerhart* (1983) 461 U.S. 424, 435 [76 L.Ed.2d 40, 52, 103 S.Ct. 1933], fn. omitted.) The process of litigation is often more a matter of flail than flair; if the criteria of section 1021.5 are met the prevailing flailer is entitled to an award of attorney fees.

■ The compensatory scope of section 1021.5 is broad. For example, where a party tenders a constitutional claim and a "technical" statutory claim and the matter is resolved on the statutory ground, an award may be warranted on the theory the action served to vindicate the more important constitutional right. (See *Woodland Hills Residents Assn., Inc., supra,* 23 Cal.3d at pp. 936-938; also see, e.g., Cal. Attorney's Fees Award Practice, *supra,* § 3.8.) (Here Drew tendered such tandem claims, albeit the appraisal in the trial court addressed the statutory claim as the "important right affecting the public interest.") Litigation often involves a succession of attacks upon an opponent's case; indeed, the final ground of resolution may only become clear after a series of unsuccessful attacks. Compensation is ordinarily warranted even for unsuccessful forays. (See *Folsom* v. *Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 685-686 [186 Cal.Rptr. 589, 652 P.2d 437]; *Sundance* v. *Municipal Court* (1987) 192 Cal.App.3d 268, 273-274 [237 Cal.Rptr. 269].)

■ A litigant should not be penalized for failure to find the winning line at the outset, unless the unsuccessful forays address discrete unrelated claims, are pursued in bad faith, or are pursued incompetently, i.e, are such that a reasonably competent lawyer would not have pursued them. Time not reasonably spent by counsel for the prevailing party need not be compensated and bad faith can constitute a basis for a total disentitlement. (See *Serrano* v. *Unruh, supra,* 32 Cal.3d at p. 635.) None of these exceptions apply here. There is no finding or suggestion of bad faith on this record. Nor is there an express finding, or apparent suggestion, that Drew's counsel was incompetent in failing to eschew pursuit of his constitutional claim in deference to his statutory theory.

A careful review of the progress of the litigation shows nothing out of the ordinary as regards counsel's work. "[A]s a practical matter, it is impossible for an attorney to determine before starting work on a potentially meritori-

ous legal theory whether it will or will not be accepted by a court years later following litigation. It must be remembered that an award of attorneys' fees is not a gift. It is just compensation for expenses actually incurred in vindicating a public right. To reduce the attorneys' fees of a successful party because he did not prevail on all his arguments, makes it the attorney, and not the defendant, who pays the cost of enforcing that public right." (*Sundance, supra,* 192 Cal.App.3d at p. 273.)

The City's lament over the protracting of litigation again rings hollow (fn. 5, *ante*)—its counsel never suggested that the constitutional issue should be placed on hold until the statutory issue was resolved. Nonetheless, it clings to the repentant argument that its lack of statutory authority was apparent from the beginning and foreclosed the merits of the constitutional claim.

## V.

That brings us to the City's contention that the denial of an award should be upheld on grounds not relied upon by the trial court. It argues that Drew's claim for fees should be denied for failure to meet additional criteria of section 1021.5: (1) the failure to enforce an important right affecting the public interest; (2) the failure to confer a significant benefit on the general public or a large class of persons; and (3) that the financial burden of private enforcement is not such as to make the award appropriate. None of these arguments is persuasive.

■ Section 1021.5 "provides no concrete standard or test against which a court may determine whether the right vindicated in a particular case is sufficiently 'important' to justify a private attorney general fee award . . . ." (*Woodland Hills Residents Assn., Inc., supra,* 23 Cal.3d at p. 935.) "[T]he statute directs the judiciary to exercise judgment in attempting to ascertain the 'strength' or 'societal importance' of the right involved." (*Ibid.*) The City argues that the right which was enforced here is "the right not to have schools financed through the assessment district provisions of the Streets and Highways Code." This narrow characterization is inappropriate. The underlying right enforced must be more broadly viewed.

Because no appeal has been taken on the merits of the dispositive statutory claim we must *assume* that the trial court correctly decided that the assessment scheme of the City was ultra vires. ■ That is to say, the City sought to exact an unlawful levy, one not permitted by a valid exercise of the legislative power. The prevention of such a levy by legal intervention in a validation action, regardless of its beneficent purposes, enforces an important public right. Imposition of an unlawful levy is a species of taxa-

tion without representation. The importance of avoiding that consequence carries the stamp of history.

■ The City next argues that the action did not confer a significant benefit on the general public or a large class of persons. It reasons that there is no such benefit because the lack of an appeal on the merits has limited the effect of the decision to the parties and the District will find some other way to finance the schools. Assuming that the effect of the action is limited to those subject to the assessment scheme, it would have unlawfully exacted $7,448,320 in assessments on residential property. The avoidance of such an unlawful levy is a significant benefit to a large class of persons.

■ The City's final argument is that Drew has not met the statutory requirement that the "financial burden of private enforcement [be] such as to make the award appropriate . . . ." The City argues that Drew's "purported public interest was merely coincidental to his primarily personal pecuniary interest." This argument misses the point of the requirement. The issue is not the coincidence of private and public interest but whether the individual stake of the litigant would have been sufficient in its own right to have motivated his participation in the litigation. (See, e.g., *Woodland Hills Residents Assn., Inc., supra,* 23 Cal.3d at p. 941.) Here the individual stake is avoidance of an assessment on Drew's property of $920. Such a stake cannot by the wildest flight of fancy be viewed as other than grossly disproportionate to the litigation costs of opposing a validation action commenced by a municipality.

### *Disposition*

Drew meets the requirements of section 1021.5 of the Code of Civil Procedure and is entitled to recover his attorney fees. (See *Baggett* v. *Gates, supra,* 32 Cal. at p. 143.) The order denying an award of attorney fees is reversed and the matter is remanded to the trial court for determination of the amount of the award.

Evans, Acting P. J., and Sims, J., concurred.

A petition for a rehearing was denied March 15, 1989, and the opinion was modified to read as printed above.