Filed 10/23/20  Conservatorship of D.D. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| Conservatorship of the Person and Estate of D.D. | |
| STANISLAUS COUNTY PUBLIC GUARDIAN, as Conservator, etc., <br><br> Petitioner and Respondent, <br><br> v. <br><br> D.D., <br><br> Objector and Appellant. | F078683 <br><br> (Super. Ct. No. 32828) <br><br><br> **OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Kellee C. Westbrook, Judge.

Rudy Kraft, under appointment by the Court of Appeal, for Objector and Appellant.

Thomas E. Boze, County Counsel, and Marc Hartley, Deputy County Counsel, for Petitioner and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Franson, J. and DeSantos, J.

In conservatorship proceedings under the Lanterman-Petris-Short Act (the LPS Act) (Welf. & Inst. Code, § 5000, et seq.),[1] a jury found appellant, D.D., to be "gravely disabled" due to a mental disorder, whereupon the trial court granted the petition to establish a conservatorship and appointed respondent Stanislaus County Public Guardian (respondent or county) as the conservator of appellant's person and estate. Appellant appeals from the trial court's ruling on narrow grounds. Appellant does not dispute the trial court's decision to establish a conservatorship in light of the jury's findings, but she claims the trial court abused its discretion in selecting respondent as her conservator without first considering whether one of appellant's family members might serve in that capacity. Under the circumstances of this case, we agree with appellant. Accordingly, we reverse the trial court's preemptory selection of respondent as conservator and remand that issue back to the trial court for a further hearing.

## FACTS AND PROCEDURAL HISTORY

Appellant is a single woman in her late 70's who has been diagnosed with schizophrenia and has a history of multiple involuntary psychiatric hospitalizations. She has also been diagnosed with neurocognitive disorder, a form of dementia. Prior to the establishment of the conservatorship in this case, appellant was living in her home (held in trust for her) in the Riverbank area of Stanislaus County. In recent years, there have been several occasions while appellant was residing at home that her condition dramatically deteriorated. On those occasions, when her mental and physical condition was discovered by case workers, it resulted in involuntary psychiatric hospitalizations for periods of time, after which appellant would typically be sent back home based on the family's assurances to take care of her. The most recent such episodes requiring psychiatric hospitalization took place in May 2017, October 2017, March 2018 and

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

2.

July 2018. It was after the last of these episodes that the present conservatorship was sought.

On July 27, 2018, the petition for appointment of a conservator of appellant's person and estate under the provisions of the LPS Act was filed by county counsel for Stanislaus County (the petition). The petition was based on the verified allegations of a conservatorship investigating officer, along with the accompanying declaration of a mental health professional. The petition asserted that a conservatorship is required because appellant is a gravely disabled person as defined in the LPS Act and is unable or unwilling to accept treatment voluntarily. The petition requested, among other things, that "the Public Guardian of the County of Stanislaus, *or some other suitable person*, be appointed as Conservator of the Person and Estate of [appellant] for a one-year period." (Italics added.)

A temporary conservatorship was granted by the trial court, with respondent appointed to serve as appellant's temporary conservator. Thereafter, a conservatorship investigation report was completed and filed with the trial court by Angelica Sanchez, a conservatorship investigator who was employed by Stanislaus County's mental health agency known as Behavioral Health and Recovery Services. At that point, the remaining question before the trial court under the petition was whether a long term (i.e., one-year) conservatorship should be established, which would require a finding of grave disability by proof beyond a reasonable doubt. Before the hearing commenced, appellant requested *a jury trial* on the issue of whether she is gravely disabled. The trial court granted the request.

A jury trial was commenced on November 20, 2018.

Testifying as an expert witness in favor of imposing a conservatorship, Dr. Phillip Trompetter (Dr. Trompetter), a clinical and forensic psychologist with extensive experience in making conservatorship evaluations, opined that appellant is gravely disabled as a result of a mental disorder. His opinion was based on two personal

3.

examinations of appellant and a review of appellant's psychiatric history reflected in the medical records. The specific mental disorders with which appellant was diagnosed by Dr. Trompetter were schizophrenia, and also a neurocognitive disorder or dementia. According to Dr. Trompetter's evaluation, appellant would not take her medications unless supervised by someone specially assisting her, in part because appellant lacks insight into her own condition and does not believe she has any mental disorder and does not believe she needs the medications that are prescribed to her. Dr. Trompetter further observed that appellant's lack of insight is consistent with her history of having "many, many episodes" between 2015 and 2018 in which she would "deteriorate and require psychiatric hospitalization," because she would stop taking her medication for days despite her family's best efforts to get her to remain on her medications. Also, he testified that on the occasions appellant stopped taking her medications, she would also stop eating and drinking, would not bathe, spoke in nonsense, and would become agitated, hostile and delusional, all of which were manifestations of her schizophrenia.

There was also testimony at trial by case workers and mental health clinicians regarding the most recent episodes leading to appellant's involuntary hospitalizations in 2017 and 2018. We briefly describe the witness account of the July 2018 incident to provide an example of what was repeatedly taking place, according to the evidence at trial. In the July 2018 incident, during a routine home visit by a county mental health clinician, appellant was found unresponsive, covered in urine, and either unable or unwilling to speak at all. She was in a fetal position, and there were no sheets or bedding on the bed. Once paramedics arrived, appellant suddenly became highly agitated and combative, yelling and screaming that she was God and telling them all to get out or else they were all going to burn. In her agitated state, appellant continued to say nonsensical things and it took four or five paramedics to finally restrain her. We would further note that the accounts of the other episodes requiring appellant's psychiatric hospitalizations in 2017 and 2018 were described by trial court testimony in similar terms.

4.

The conservatorship investigator assigned to appellant's case, Angelica Sanchez, testified regarding the matters she reported in her conservatorship investigation report. She stated that appellant's recurring psychiatric hospitalizations indicated appellant was not taking her medications. In explaining her recommendation that a conservatorship be ordered for appellant, Ms. Sanchez testified as follows: "In the past two years, she has required re-occurrent hospitalizations into the psychiatric unit. Typically, it involves her going into the facility. She's found gravely disabled. [¶] Usually her presentation looks like she has not showered. She stops eating. She stops taking her medication. Then requires a hospitalization. [¶] She goes in. Her family wants to take her back home. She goes home. And then a few months later, typically, she goes back into the hospital with the same presentation." Ms. Sanchez testified at trial, as her report also stated, that her recommendation was that respondent (i.e., the public guardian) should be appointed as conservator in this case. Her only explanation for this recommendation was a general one, stating that she makes such a recommendation when other means or other persons in the community have been exhausted or failed, leaving the need to appoint the public guardian as the last resort.

In an effort to disprove grave disability, appellant's family members testified at trial that they could provide adequate help, assistance and support to appellant that would meet her basic needs. (See § 5350, subd. (e)(1) [clarifying that a person is not gravely disabled if that person can "survive safely without involuntary detention with the help of responsible family, friends, or others who are both willing and able to help provide for the person's basic personal needs for food, clothing, or shelter"].) In regard to the nearby availability of family assistance, one of her sons, P.D. and his wife S.D., live only a few blocks away from appellant's house. P.D.'s son, appellant's grandson, lives in the house with appellant and regularly helps her. Although appellant's other son, M.D., lives in Atascadero and is unable to visit appellant as often, he testified of his willingness to help in other ways, including financially; and if necessary, he was willing for appellant to

5.

come live with him. Appellant's family members had hoped that appellant could remain living in her home, if possible, with the help of their assistance and other in-home services. According to P.D., the family's current plan for taking care of appellant was mainly for intensive in-home care that could include skilled nursing home care, if necessary, and the family would have someone at the house with appellant on a 24-hour basis. P.D. also expressed that he and other family members would take necessary steps to "make sure" she takes her medication. The family was not ruling out other options, such as an outside care facility, if that became necessary, but they believed appellant would be happier at home.

On November 26, 2018, after the presentation of all the evidence and closing arguments, the jury returned its unanimous verdict finding that appellant is "gravely disabled." After the jury was dismissed, the trial court asked for preparation of a formal order granting the petition for conservatorship. At that time, the trial court stated that it was going to appoint "the Public Guardian of Stanislaus County" as "conservator of the person and estate of [appellant]." On November 27, 2018, the trial court's written order, entitled "Order Granting Petition to Appoint LPS Conservator" was filed. The order decreed that, as was found by the jury, appellant "is gravely disabled as a result of a mental disorder and is unable to provide for her basic personal needs for food, clothing, or shelter." The trial court appointed "[t]he Public Guardian of the County of Stanislaus" as the "Conservator of the person and estate of [appellant]," and letters of conservatorship were accordingly issued. The trial court noted that Crestwood Manor, in Modesto, California, would be an appropriate facility for appellant. Lastly, the trial court's order stated: "This Conservatorship shall automatically terminate on November 25, 2019."

Appellant's notice of appeal timely followed.

6.

## DISCUSSION

### I. Overview of the LPS Act

The LPS Act governs the involuntary treatment of the mentally ill in California. (*Michelle K. v. Superior Court* (2013) 221 Cal.App.4th 409, 424.) The LPS Act "authorizes the appointment of a conservator for up to one year for a person determined to be gravely disabled as a result of a mental disorder and unable or unwilling to accept voluntary treatment." (*Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1009; see § 5361 [one-year expiration].) Because of the personal liberties at stake, the party seeking to impose the conservatorship must prove grave disability beyond a reasonable doubt. (*Conservatorship of Susan T.*, *supra*, at p. 1009.) If a jury trial is requested, the verdict must be unanimous. (*Ibid.*) "Gravely disabled" is defined as "[a] condition in which a person, as a result of a mental health disorder, is unable to provide for his or her basic personal needs for food, clothing or shelter." (§ 5008, subd. (h)(1)(A).) Under section 5350, subdivision (e)(1), a person is not gravely disabled if that person can "survive safely without involuntary detention with the help of responsible family, friends, or others who are both willing and able to help provide for the person's basic personal needs for food, clothing, or shelter." As the LPS Act and cases interpreting it reflect, " '[t]he clear import of the LPS Act is to use the involuntary commitment power of the state sparingly and only for those truly necessary cases where a "gravely disabled" person is incapable of providing for his basic needs either alone or with help from others.' [Citation.]" (*Conservatorship of K.W.* (2017) 13 Cal.App.5th 1274, 1280.)

### II. Issue Raised on Appeal and Standard of Review

Appellant does not challenge the finding that she is gravely disabled or the trial court's decision to establish a one-year LPS Act conservatorship. Accordingly, those discrete rulings are affirmed.

The narrow scope of appellant's appeal relates solely to the trial court's discretionary selection of respondent as her conservator, which selection according to

7.

appellant did not adequately consider whether one or more of appellant's family members might be willing and able to serve as conservator instead of respondent. We review the appointment of a particular conservator for abuse of discretion. (See *Conservatorship of Walker* (1987) 196 Cal.App.3d 1082, 1100–1101.)

Generally, the appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason, all of the circumstances before it being considered. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478; *In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598.) Of course, such discretion by the trial court is not unlimited but is "a legal discretion, which is subject to the limitations of legal principles governing the subject of its action." (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.) Another ground upon which an abuse of discretion may be found is where the trial court erred by acting on a mistaken view about the scope of its discretion. (See *Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 285; *City of Sacramento v. Drew*, *supra*, 207 Cal.App.3d 1287, 1298.)

### III. The Trial Court's Preemptory Selection of a Conservator Abused its Discretion

We begin our analysis by reviewing the legal principles and factors that must be considered by the trial court in its selection of a conservator. A trial court's selection of a conservator is "solely in the discretion of the court and, in making the selection, the court is to be guided by what appears to be for the best interests of the proposed conservatee." (Prob. Code, § 1812, subd. (a).) In exercising that discretion, the court must also consider the purposes of protecting the public and treating the conservatee. (§ 5350, subd. (b)(2).) "The LPS Act requires the conservatorship investigation report to designate the most suitable person to serve as conservator. (§ 5355.)" (*Conservatorship of Walker*, *supra*, 196 Cal.App.3d at p. 1100.) Unless the investigating officer who completed the conservatorship investigation recommends otherwise to the superior court, the list of priorities set forth in section 1812 of the Probate Code are applicable. (§ 5350, subd. (b)(1).) The list of priorities includes the adult children of the proposed

8.

conservatee, among other family relatives.  (Prob. Code, § 1812, subd. (b)(2).)  The public guardian shall only serve as the LPS Act conservator in a particular case "if the court finds that no other person or entity is willing and able to serve as conservator." (§ 5354.5.)

*Conservatorship of Walker*, *supra*, 196 Cal.App.3d 1082, is a watershed case articulating how the above principles should work together in guiding the trial court's exercise of discretion.  In that case, the trial court denied the prospective conservatee's request for a hearing on the issue of who should serve as his conservator, and instead the trial court peremptorily appointed the public guardian as conservator.  (*Id*. at p. 1100.) The trial court so ordered even though there were family members clearly interested in the conservatee's care, any one of whom may have been willing and able to serve as conservator.  The conservatee appealed.  (*Id.* at pp. 1088, 1101.)  After reviewing the same principles that we have outlined above relating to the selection of a conservator, the Court of Appeal in *Conservatorship of Walker* concluded that the trial court failed to properly exercise its discretion because "the issue of whether a family member would be willing to serve as conservator was not adequately addressed."  (*Id*. at p. 1100.)  In highlighting the nature of the trial court's error in that case, *Conservatorship of Walker* noted that "[t]he trial court's summary appointment of the public conservator was erroneously made over [the conservatee's] objection without a full determination that family members, obviously interested in [the conservatee's] welfare, were unwilling to serve."  (*Id*. at p. 1101.)

*Conservatorship of Walker* also explained the effect of the provision in section 5350 subdivision (b) that precedence may be given to the conservatorship investigator's recommendation of a conservator above the priorities in the Probate Code. On that issue, the appellate court's decision stated as follows:  "Although section 5350, subdivision (b) suggests the investigator's recommendation takes priority over the list of priorities in the Probate Code, the trial court should evaluate the basis of the

9.

recommendation. If the investigation was deficient, the trial court should make further inquiry." (*Conservatorship of Walker*, *supra*, 196 Cal.App.3d at p. 1101.) In other words, the bare conclusion in the report that the public guardian should be appointed was insufficient in that case where (i) the conservatee had requested a hearing on the issue of who should serve as conservator and (ii) several family members were obviously interested in the conservatee's welfare and may have been qualified to serve. Finally, the appellate court noted its conclusions were buttressed by a recently added section to the LPS Act providing that the public guardian shall serve as conservator " '*if the court finds that no other person or entity is willing and able to serve as conservator.*' (§ 5354.5, italics added.)" (*Conservatorship of Walker*, *supra*, at p. 1101.) Therefore, *Conservatorship of Walker* concluded that although the order establishing a conservatorship was affirmed, the order designating the public guardian as conservator was reversed and remanded for a further hearing on that issue. (*Id*. at p. 1102.)

In the present case, we conclude the situation is closely analogous to what occurred in *Conservatorship of Walker*. Although no motion was made to consider the selection of a conservator, appellant's family members in pretrial proceedings expressed to the trial court they have reasons to be concerned about the adequacy of the level of care being provided by the county under respondent's temporary conservatorship, including concerns of over-medicating or of medications harmful to appellant. Although the trial court precluded such testimony at the trial itself because the sole issue there was whether appellant was gravely disabled, this pretrial exchange with family members clearly alerted the trial court that the selection of a conservator in this case was not routine and the available options should be carefully weighed and considered. However, as soon as the jury announced its verdict finding that appellant was gravely disabled, the trial court immediately announced from the bench it was appointing respondent public guardian as the conservator for appellant. This summary decision was made even though there was considerable testimony at trial from numerous family members of their care

and concern for appellant, and of their desire to continue to have significant involvement in her care, support and welfare. There is nothing in the record to suggest the trial court ever considered whether one or more of appellant's family members were willing and able to serve as appellant's conservator. Although it is true the conservatorship investigator, Angelica Sanchez, did make a conclusory recommendation that respondent (i.e., the public guardian) be appointed, no factual explanation or rationale was provided for not considering one or more of the family members in this case. As in *Conservatorship of Walker*, this was a situation where further inquiry by the trial court was warranted under the circumstances before making the decision to appoint respondent, particularly in light of the fact that a public guardian is only to be appointed if there is no other suitable person who is willing and able. (§ 5354.5.) Moreover, although it may be inferred from appellant's repeated need for psychiatric hospitalizations that P.D. and other family members were unsuccessful in consistently monitoring appellant's condition, their testimony at trial reflected they were now prepared to bring in professional third party assistance to be involved in appellant's daily care, or to do much more than that if necessary. On this unique record, we conclude the trial court abused its discretion by making a preemptory decision without any consideration of whether appellant's family members might be willing and able to serve as conservator of appellant.

## DISPOSITION

The order establishing a one-year LPS conservatorship is affirmed. However, the portion of the order designating respondent as conservator is reversed, and that limited issue is remanded to the trial court for further proceedings consistent with this opinion.

11.