Filed 7/31/13  Barez v. Ni CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| FRED BAREZ, et al.,<br><br>　　Plaintiffs, Cross-defendants, and Respondents,<br><br>　　v.<br><br>NICK ZHI NI, et al.,<br><br>　　Defendants, Cross-Complainants, and Appellants. | H037572<br><br>(Santa Clara County<br>Super. Ct. No.1-10-CV170304) |

After a jury trial in this breach of contract action, the superior court determined that there was no prevailing party under Civil Code section 1717.  Appellants Nick Ni and Renee Zhou contend that they were the prevailing party and therefore should have been awarded their attorney's fees.  We find no abuse of discretion and affirm the judgment.

*Facts*

1

Plaintiff and respondent Rank Technology Corporation is the owner of commercial property at 4131 El Camino Real in Palo Alto. Fred Barez is the sole shareholder of Rank Technology and its leasing agent for the property. In early February 2010, appellants leased property from Rank Technology through Barez.

The lease provided for a term of five years, beginning February 5, 2010 and ending January 31, 2015. Appellants gave Barez a security deposit of $10,000. The lease contained an attorney's fees provision which stated, "If any Party or Broker brings an action or proceeding involving the Premises whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees. . . . The term, 'Prevailing Party' shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or abandonment by the other Party or Broker of its claim or defense."

On April 9, 2010, appellants sent an email to Barez attempting to cancel the lease in accordance with paragraph 3.3, which provided for an option to cancel the contract if possession of the property was not delivered on time.

Respondents filed their first amended complaint for breach of contract and breach of guaranty on June 10, 2010, alleging that appellants had breached the contract and their personal guaranty of performance by cancelling the lease. Due to this breach, respondents alleged, they suffered damages of $233,106.20 in rent owed for the lease period, and $80,655 for operating expenses in the common areas. They had also spent more than $15,000 "conforming the Property to Defendants' needs." Respondents asked for $328,761.20 in compensatory damages along with interest and costs, including attorney's fees. In April 2011, respondents found another tenant for the property and consequently reduced their total claim to $106,917.

2

Appellants filed a cross-complaint on July 12, 2010, alleging fraudulent inducement and breach of contract. In their first cause of action, they alleged that Barez had made false representations to them with respect to his ownership of the property and his intent to make improvements to it in time for appellants' occupancy. Apparently, this claim was dropped prior to trial.

In their second cause of action for breach of contract, appellants alleged that respondents had breached the lease by failing to deliver the property as they had promised. Appellants claimed damages resulting from the breach including payment of higher rent at another location, out-of-pocket costs, and loss of their deposit. They did not specify an amount. In an earlier letter to respondents, however, they had demanded a "full refund," including their deposit and "incidental damages" of $9,730 plus legal fees and "other potential damages."

The case was tried before a jury on July 6, 2011, culminating in a special verdict which denied relief to both parties. The jury found that the parties had entered into a contract and that neither of them had fulfilled their obligations under the contract nor were they excused from doing so. The judgment stated that neither party would take anything on its complaint.

On July 29, 2011, appellants filed a motion for costs and $142,542 in attorney's fees. In support of their request for attorney's fees, they contended that they had attained a "simple, unqualified win," and thus they were the prevailing party. Because they received "greater relief" than the plaintiffs, they argued, it was "undisputable" [*sic*] that they were the prevailing party and thus should be awarded attorney's fees and costs under Civil Code sections 1717 and 1032.

Respondents filed their opposition to appellants' attorney's fees motion on August 15, 2011. They also submitted their own motion for attorney's fees. They contended that they were the recipients of greater relief in the action and thus were the prevailing party for purposes of attorney's fees because they were able to retain

3

appellants' $10,000 deposit. Appellants, they argued, "were instead required to pay rent, expenses, and a security deposit to Plaintiffs when they did not ever move into or occupy the Property." They asked for $113, 681 in attorney's fees.

The trial court issued an order on September 12, 2011, denying both parties' motions for attorney's fees. It stated, "the court exercises its discretion to determine that there is no prevailing party on the contract under Civil Code 1717, subdivision (b)(1). Here, both Plaintiffs and Defendants sued each other for money claiming breach of contract, but neither side prevailed. . . . [F]airness dictates that each side should pay its own attorneys' fees." Citing *Hsu v. Abbara* (1995) 9 Cal.4th 863 (*Hsu*), the court noted that that while "Plaintiffs were seeking more money in their complaint under the lease than Defendants in their cross-complaint, it's also true that the Plaintiffs got to keep money paid by Defendants before the lawsuit was filed, and the jury denied both sides any recovery under the contract." Accordingly, the parties were directed to pay their own attorney's fees. Appellants filed a timely notice of appeal from this order.

*Discussion*

The only issue on appeal is whether the trial court abused its discretion in finding that there was no prevailing party for purposes of attorney's fees under Civil Code section 1717.[1] Appellants contend that they were the prevailing party and thus were entitled to attorney's fees because they achieved their main litigation objective and obtained the "greater relief." Additionally, they argue that the trial court did not conduct a proper analysis when making its decision.

Section 1717, subdivision (a), states in relevant part, "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract . . . shall

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

4

be entitled to reasonable attorney's fees in addition to other costs."  Additionally, subdivision (b)(1) provides, "The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment. Except as provided in paragraph (2), the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section."

The purpose of section 1717 is to " 'establish mutuality of remedy where [a] contractual provision makes recovery of attorney's fees available for only one party [citations], and to prevent oppressive use of one-sided attorney's fees provisions. [Citation.]' " (*Hsu, supra,* 9 Cal.4th at p. 870; see also *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128.) "To achieve its goal, the statute generally must apply in favor of the party prevailing on a contract claim whenever that party would have been liable under the contract for attorney fees had the other party prevailed." (*Hsu*, *supra*, 9 Cal.4th at pp. 870-871.)

1.  *Standard of Review*

Appellants acknowledge that the trial court's ruling will stand absent an abuse of discretion.  "The trial court ' " 'is given wide discretion in determining which party has prevailed on its cause(s) of action. . . .' "  [Citation.]' "  (*Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1158.)  More specifically, "If neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." (*Scott Co. of California v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109.)

2.  *Prevailing Party Determination*

Both parties and the trial court agree that the applicable case law was set forth in *Hsu¸ supra*, 9 Cal.4th 863, which also involved a dispute over a real estate contract.  The

5

plaintiffs made an offer on a home using a form contract which included a clause providing for attorney's fees to the prevailing party in the event of a dispute. (*Id.* at p. 866.) After a considerable number of offers and counter-offers, the defendants decided they did not want to sell their home to the plaintiffs. (*Id.* at p. 867.) The plaintiffs sued, seeking specific performance. (*Ibid.*) Defendants cross-complained against their agents, seeking indemnity and damages, and the trial was bifurcated. (*Ibid.*) Defendants ultimately succeeded in proving that no contract had been formed, but the trial court refused to award them attorney's fees and did not give an explanation for that decision. (*Id.* at p. 869.) Both parties appealed. (*Id.* at p. 869-870.)

The issue in *Hsu* was "whether a trial court may determine that there is no 'party prevailing on the contract' when the court renders a simple, unqualified decision in favor of the defendant on the only contract claim in the action." (*Id.* at pp. 865-866.) The Supreme Court held that in that situation, the defendant is the "sole victor," and as such is entitled to attorney's fees. (*Id.* at p. 866.)

The court gave further instruction to trial courts in making prevailing party determinations: "[W]e hold that in deciding whether there is a 'party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made . . . only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' " (*Hsu*, *supra*, 9 Cal.4th at p. 876, quoting *Bank of Idaho v. Pine Avenue Associates* (1982) 137 Cal.App.3d 5, 15.) Moreover, "*in determining litigation success*, courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.' For example, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective. [Citations]." (*Hsu*, *supra*, 9 Cal.4th at p. 877.)

6

The parties in this case agree that in contrast to *Hsu*, here there was no clear winner. As articulated in *De la Cuesta v. Benham* (2011) 193 Cal.App.4th 1287, "The *Hsu* court . . . left the distance between, on the one extreme, a 'simple unqualified win' *entitling* the winner to fees—and, on the other, a split decision, clearly leaving no party *entitled* to fees—unexplored." (*Id*. at p. 1293.)

However, in *Scott Co. v. Blount* (1999) 20 Cal.4th 1103, the Supreme Court explained, "If neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." (*Id*. at p. 1109.)

The court in *Sears v*. *Baccaglio, supra,* 60 Cal.App.4th 1136 helped define "greater relief" for purposes of determining which party received the greater recovery under section 1717. "Because the statute allows such discretion, it must be presumed the trial court has also been empowered to identify the party obtaining '*a greater relief*' by examining the results of the action in relative terms: the general term 'greater' includes '[l]arger in size than others of the same kind' as well as 'principal' and '[s]uperior in quality.' " (*Id*. at p. 1151.) Moreover, when deciding who prevailed under section 1717, " 'equitable considerations must prevail over both the bargaining power of the parties and the technical rules of contractual construction.' " (*Bank of Idaho v. Pine Avenue Associates*, *supra*, 137 Cal.App.3d at p. 17.) Therefore, the person receiving the greater monetary judgment is not necessarily the party recovering the "greater relief." (*Sears v. Baccaglio, supra*, 60 Cal.App.4th at p. 1151.) "In the event one party received earlier payments, settlements, insurance proceeds or other recovery, the court has discretion to determine whether the party required to pay a nominal net judgment is nevertheless the prevailing party entitled to attorney's fees pursuant to section 1717." (*Id.* at pp. 1154-1155.)

7

Finally, it is the case that "[t]ypically, a determination of no prevailing party results when both parties seek relief, but neither prevails, or when the ostensibly prevailing party receives only a part of the relief sought."  (*Deane Gardenhome Assn. v. Denktas* (1993) 13 Cal.App.4th 1394, 1398.)

Appellants complain that the trial court failed to conduct a proper analysis under section 1717.  They contend that "the trial court gave short shrift to the different amounts of money at stake in the litigation"  because it did not conduct a " 'comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions,' " as *Hsu* requires.  The trial court therefore abused its discretion because "it did not consider all of the factors the Supreme Court mandated in its landmark decision *Hsu v. Abbara . . . .*"

The defendant in *Cussler v. Crusader Entertainment* (2012) 212 Cal.App.4th 356 made a similar argument regarding the insufficiency of the trial court's analysis.  There, defendant Crusader contended that the trial court had failed to apply *Hsu* correctly in determining whether the parties had obtained their litigation objectives.  (*Id.* at p. 367.)  The court noted that the defendant's only support for this argument was that "in its minute order the trial court did not expressly state that it determined the parties' litigation objectives by looking at the 'pleadings, trial briefs, opening statements, and similar sources' as *Hsu* directs.  [Citation.]  From this omission, Crusader *presumes* that the trial court did not analyze the parties' pleadings, trial briefs, opening statements and similar sources."  (*Ibid*.)  The court in *Cussler* reminded the parties of the long-settled rule that " ' " '[a] judgment or order of the lower court is *presumed correct*.  All intendments and presumptions are indulged to support it on matters to which the record is silent, and error must be affirmatively shown. . . .' " ' "  (*Id.* at p. 367; see also *Yu v. University of La Verne* (2011) 196 Cal.App.4th 779, 787; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)  The court held that because "[n]othing in the record in this case indicates that the trial court did not consider the pleadings, trial briefs, opening statements and

similar sources in determining whether the parties achieved their litigation objectives," it would "thus presume that the trial court did consider such sources in a manner consistent with *Hsu."* (*Cussler v. Crusader Entertainment*, *supra,* 212 Cal.App.4th at p. 367.)

We follow this reasoning. "Unless the record is to the contrary, we must take the trial court at its word and assume it did its duty." (*Acree v. General Motors Acceptance Corp.* (2001) 92 Cal.App.4th 385, 400.) Appellants' blunt assertion that the trial court paid "mere lip service to the correct standard for determining the prevailing party" is not supported by any affirmative showing. There is nothing in the record to indicate that the trial court ignored the requirements of *Hsu* and we will not presume otherwise. To the contrary, the trial court cited *Hsu* numerous times. "[T]he court was not required to mention every arguably pertinent item of evidence before it, let alone explain in minute detail its view of each item." (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 565.) As we stated in *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 67, "The absence of an explanation of a ruling may make it more difficult for an appellate court to uphold it as reasonable, but we will not presume error based on such an omission."

Appellants further cite *Hsu* for the proposition that if a trial court concludes that a defendant's cross-complaint is "essentially defensive in nature, it may properly find the defendant to be the party prevailing on the contract." (*Hsu*, *supra*, 9 Cal. 4th at 875, fn. 10.) Appellants argue that their cross-complaint was "almost purely defensive" because it was compulsory and it "asserted facts and claims that were consistent with and supplemented the defenses they raised." Therefore, they contend, they should have been declared the prevailing party under section 1717.

A compulsory cross-complaint contains a claim that arises "out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." (Code Civ. Proc. §§ 426.10, subd. (c), 426.30, subd. (a).) It is forfeited if it is not pleaded in a cross-complaint. "In the breach

9

of contract context, the rule means [that] any claims the defendant has against the plaintiff based on the same contract generally must be asserted in a cross-complaint, even if the claims are unrelated to the specific breach or breaches that underlie the plaintiff's complaint." (*Frog Creek Partners, LLC v. Vance Brown, Inc.* (2012) 206 Cal.App.4th 515, 538.)

There is no dispute that appellants' contract claim was compulsory under the statute. Nevertheless, that a claim is compulsory within the meaning of Code of Civil Procedure sections 426.10, subdivision (c) and 426.30, subdivision (a) does not mean a party is *compelled* to bring it, nor does it make the cross-action defensive. Appellants were not "forced" to bring this claim, as they contend.[2] In an admittedly "strategic" decision, appellants chose to bring this claim for $10,000, even though they knew that they might forfeit over $140,000 of attorney's fees in doing so if the court found that they were not the prevailing party (and over $200,000 if the trial court found the respondents to be the prevailing party).

In any event, a finding that a cross-claim is defensive is not dispositive. In *Hsu*, our Supreme Court stated, "When there are cross-actions on a contract containing an attorney fees provision, and no relief is awarded in either action, a trial court is not *obligated* to find that there is no party prevailing on the contract for purposes of section 1717. If the court concludes that the defendant's cross-action against the plaintiff was essentially defensive in nature, it *may* properly find the defendant to be the party prevailing on the contract." (*Hsu, supra*, 9 Cal.4th at p. 875 fn. 10, italics added.) The word "may" indicates that even if a trial court found that the cross-complaint was

_____

[2]  Appellants argue that their counsel felt he was in a "damned-if-you-do-damned if you don't" situation. If he had not brought the cross-action, he argues, he would have committed malpractice. Bringing the action, on the other hand, would mean running the risk of forfeiting their right to attorney's fees; if they had not brought the cross-action and had prevailed in defeating plaintiffs' action, they would have been deemed the prevailing party.

essentially defensive in nature, it nonetheless would be entitled to refuse to find that the defendant was the prevailing party on the contract. Following this language, the trial court here was not obligated to determine that the appellants were the prevailing party even if it found their cross-action to be defensive.

The trial court could reasonably have found that the appellants' cross-complaint was not defensive in nature.[3] But even if the trial court did determine that the complaint was defensive, it was not required to find appellants to be the prevailing party under *Hsu*. Because this is a discretionary matter, and because the trial court's decision was not arbitrary or capricious, we cannot overturn it. (See *Cussler v. Crusader Entertainment, supra,* 212 Cal.App.4th at p. 368.)

Appellants further claim that they were the prevailing party because they achieved their main litigation objective—to "avoid paying damages for breach of contract." They cite *Silver Creek LLC v. BlackRock Realty Advisors, Inc.* (2009) 173 Cal.App.4th 1533 (*Silver Creek*) in support of this contention. In *Silver Creek*, BlackRock Realty Advisors attempted to purchase commercial properties from Silver Creek and executed a number of agreements to that effect. (*Id.* at p. 1536.) A dispute regarding the terms later led Silver Creek to inform BlackRock that it was terminating the agreements. (*Ibid.*) After BlackRock did not acknowledge Silver Creek's notification, Silver Creek filed an action seeking a declaration that the termination of the agreements was valid, and that Silver Creek was entitled to retain BlackRock's deposit. (*Ibid.*) BlackRock cross-complained, alleging that "Silver Creek had breached its obligation to act reasonably in approving a loan release and thus its purported termination of the agreements was invalid." (*Id.* at p. 1536.) The trial court granted Silver Creek's declaratory action and denied BlackRock's

---

[3] It could have based this decision on the letter that appellants wrote to respondents prior to the initiation of this suit threatening litigation. As noted earlier, in that letter appellants requested the return of their deposit plus over nine thousand dollars. The trial court might also have given weight to appellants' initial inclusion of a fraud claim.

11

cross-claims, but returned to BlackRock its deposit.  (*Id.* at p. 1538.)  Silver Creek moved for attorney's fees under section 1717.  (*Id.* at p. 1537.)  The trial court denied this motion, reasoning that because both parties obtained some form of relief, neither attained an "unqualified victory."  (*Id.* at p. 1538.)

The Fourth District reversed in part.  The court determined that even though the trial court had correctly recognized that Silver Creek had achieved its main litigation objective, it ignored this factor in conducting its prevailing party analysis.  (*Id.* at p. 1540.)  The court held that because Silver Creek had achieved its "main litigation objective," it was the prevailing party for purposes of attorney's fees.  (*Ibid.*)

Here, by contrast, neither party succeeded in either of its affirmative actions. Nonetheless, appellants contend that they achieved their main litigation objective:  "[T]o avoid liability for over $300,000 in rent" and "to defeat plaintiffs' claim to enforce the lease."  While one of their goals was to defeat respondents' claim, the trial court impliedly found that appellants' main litigation objective was to recover their deposit, despite the compulsory nature of their cross-claim. We do not believe this decision to be an abuse of discretion and therefore will not disturb it.

Finally, appellants' repeated attempts to convince this court that they "received $106, 917:  the amount of money they could retain by not being required to pay damages" are not persuasive.  They received zero dollars.  They were never required to pay that sum of money because respondents never had a viable claim against them; thus they never lost it.  The only sum of money they parted with was their $10,000 deposit.  As we have already stated, the trial court was not required to evaluate the greater relief based on the monetary sum.  (See *Sears v. Baccaglio, supra*, 60 Cal.App.4th 1136.)  Appellants' attempt to reduce the required analysis to "simple arithmetic"  is unavailing, particularly in light of their repeated assertions that the trial court "oversimplified its duties by simply counting up the number of contract claims."  It was within the trial court's discretion to find that neither party received the greater relief.

We reiterate that the purpose of section 1717 is to provide equity to the parties. We conclude that the trial court was acting within its discretion and consistent with section 1717 in finding that "fairness dictates that each side should pay its own attorneys' fees."

*Disposition*

The judgment is affirmed.


_____

ELIA, J.


WE CONCUR:




_____

RUSHING, P. J.




_____

PREMO, J.

13