Filed 12/9/24  P. v. Poynter CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C099353 |
| Plaintiff and Respondent, | (Super. Ct. No. 22FE015282) |
| v. | |
| MARKICE YUVALDUVAN POYNTER, | |
| Defendant and Appellant. | |

Defendant Markice Yuvalduvan Poynter went to a homeless encampment to confront his former girlfriend, R. Doe, about jewelry that defendant believed she had taken.  Two witnesses told police that defendant fired a handgun at R. Doe.  Defendant admitted only that he slapped R. Doe, breaking her sunglasses and cutting her face after she spat at him.  Defendant was apprehended three days later by two of the police officers who had responded to the reported shooting.  In the backseat of a vehicle in which officers saw defendant place belongings, was a backpack belonging to defendant that

1

contained a loaded handgun, ammunition, and methamphetamine. Shell casings found at the homeless encampment matched the caliber of that gun.

Defendant was charged with attempted murder (Pen. Code, §§ 664/187; count one),[1] assault with a deadly weapon (§ 245, subd. (a)(2); count two), possession of a firearm by a felon (§ 29800, subd. (a)(1); count three), and possession of methamphetamine while armed with a firearm (Health & Saf. Code, § 11370.1, subd. (a); count four). The prosecution further alleged that defendant had suffered a prior strike conviction for first degree burglary in 2014, as well as three aggravating circumstances under California Rules of Court, rule 4.421.[2] A jury found defendant not guilty of counts one and two, but guilty of counts three and four. The jury further found that the aggravating circumstances alleged were not true. After denying defendant's motion to dismiss the prior strike conviction (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*)), the trial court sentenced defendant to an aggregate prison term of six years (three years doubled by the Three Strikes law; §§ 667, 1170.12).

On appeal, defendant contends the trial court abused its discretion in denying his *Romero* motion. We disagree and affirm.

BACKGROUND FACTS AND PROCEDURE

A.      *Responding Officers' Testimony*

On September 8, 2022, Sacramento Police Officer Michael Novak got a call from dispatch about a shooting. At the scene, he interviewed a witness, P.B.,[3] who was accompanied by the victim, R. Doe. The victim had a fresh wound near her left eyebrow

---

[1]      Undesignated section references are to the Penal Code.

[2]      Undesignated rule references are to the California Rules of Court.

[3]      To protect their privacy, we refer to the witnesses by their initials. (Cal. Rules of Court, rule 8.90(a)(1), (b)(10), (11).)

that was bleeding.  P.B. reported that a man—whom he later identified as defendant in a photographic lineup—walked down a trail with a gun calling for R. Doe.  R. Doe was sleeping on a couch; when she woke up, defendant fired the gun at her multiple times.  P.B. reported that defendant also shot P.B.'s dog.

Sacramento Police Officer Kyle Stedman was separately dispatched to the scene on a call that a female had been shot in the face.  He obtained a statement from a witness, A.C.  A.C. stated that she saw a man with a handgun fire several times at a woman.  The woman started running away; the man kept shooting.  The man got in a black SUV and fled.  A.C. gave a brief description of the shooter's physical appearance and clothing, but she could not identify him.[4]

Sacramento Police Officer Dominique Vargas booked five shell casings found at the scene into evidence.  All of them were Smith & Wesson .40-caliber casings.

Three days later, Officer Novak and his partner Officer Brett Varni were driving when they observed defendant sitting on a red car.  Officer Varni recognized defendant from a photo of the suspect in the shooting investigation.  They drove around to get a better look and defendant covered his face.  Defendant took off his sweatshirt and a black satchel backpack, walked across the street to a black SUV, put those items in it, and walked back to a red car.  The officers arrested defendant.  He had in his possession a lanyard with keys on it and a cell phone.  Using keys on the lanyard, officers opened and searched the black SUV.  Officer Varni searched the satchel in the back seat and found a .40-caliber Beretta handgun with a loaded magazine and one round in the chamber,

---

[4]     At trial, A.C. testified that she did not witness a shooting, did not see a black SUV, did not remember telling officers anything, did not see a man with a gun, did not see a girl running as the man was shooting at her, and ended up invoking her Fifth Amendment rights.  When her testimony resumed with conflict counsel, A.C. testified she did not see the shooting, though she saw the man pointing the gun, and only heard it being fired and did not see the man firing at anything.

another loaded magazine, a baggie that was determined to contain 18.8 grams of methamphetamine, a glass pipe, and an EBT card with defendant's name on it. The cell phone contained photographs from August 2022 showing defendant with the handgun found in the satchel.

After test firing a cartridge from the .40-caliber Beretta, Jonathan Charron, a criminalist in the District Attorney's forensic laboratory, determined that all five shell casings recovered from the crime scene were fired from that gun.

B.     *Defense Case*

Defendant testified at trial. He admitted having the gun shown in the cell phone photo and said he kept it for safety. He admitted he was convicted of burglary and possessing stolen property in 2014, and, as a result, was not allowed to possess a gun.[5] Defendant also admitted selling methamphetamine.

Defendant testified that he met R. Doe in 2010, and they were together for three years off and on. When their son died, defendant found out R. Doe was using methamphetamine and other drugs. After breaking up, they were still communicating, and often defendant would let R. Doe stay at his house. Defendant started dating another woman but still let R. Doe stay at his house until August 2022, when, on R. Doe's birthday, defendant refused to spend the day with her and R. Doe became very angry.

The day before the incident at the homeless encampment, defendant found out that R. Doe had broken into his house and stolen jewelry left to him by his grandmother. Defendant learned of the theft from a friend, who said R. Doe had sold him defendant's grandmother's necklace. Defendant also learned from this friend that R. Doe was living in a homeless encampment by the bike trail near defendant's house. Defendant started driving around looking for R. Doe at homeless encampments near the trail. He brought

---

[5]     The parties stipulated that in 2014 defendant was convicted of a felony.

4

his gun with him. He parked, walked along an overpass, and saw R. Doe sleeping on a couch.

Defendant tapped R. Doe on the leg and woke her up. R. Doe tried to hug him, but defendant stopped her and told her to give him back his grandmother's jewelry. R. Doe refused and spat in defendant's face. Defendant slapped R. Doe, hard enough that her sunglasses broke and cut her eye, which bled profusely. R. Doe fell to the ground. Defendant told her to keep the jewelry. R. Doe got up, ran around a trailer, and let four or five big dogs loose. Two of the dogs started fighting each other. One of the dogs, a pit bull, came at defendant, bit the arm of his shirt, and would not let go. Defendant shot the dog in the chest. The other dogs started charging defendant; he fired multiple rounds into the ground, and the dogs went the other way. Defendant got in the car and drove off.

Kaitlyn Gunther, a forensic investigator for the Sacramento Police Department, met R. Doe at the hospital after the incident and photographed her injury. Gunther testified that the injury to R. Doe's eye did not seem consistent with a gunshot graze wound.

C.     *Verdict*

On July 18, 2023, the jury found defendant not guilty of counts one and two, attempted murder and assault with a deadly weapon, involving R. Doe as the victim. Jurors found defendant guilty of count three, unlawful possession of a firearm, the .40-caliber Beretta handgun, and count four, possession of methamphetamine while armed with a firearm. The jury found not true the allegations that: (1) in the commission of the crimes, defendant acted with great violence, the threat of great bodily harm, or acted in a manner indicating a high degree of cruelty, viciousness, or callousness (Rule 4.421(a)(1)); (2) defendant was armed with or used a weapon at the time of the crimes (Rule 4.421(a)(2)); and (3) defendant engaged in violent conduct that indicates a serious danger to society (Rule 4.421(b)(1)).

5

### D. Romero *Motion and Sentence*

On August 10, 2023, defendant filed a motion to strike his prior conviction under section 1385. (*Romero, supra*, 13 Cal.4th 497.) Defendant argued that his prior convictions were property crimes that did not involve great violence or great bodily harm. In addition, despite charges of attempted murder and assault with a deadly weapon, the jury found defendant guilty only of possession of a firearm and methamphetamine, which defendant admitted at trial, and found none of the aggravating factors to be true. Defendant maintained that the relatively minor nature of his current offenses, consisting only of possession of prohibited items, factored in favor of striking the prior conviction. Defendant characterized himself as a non-violent offender whose conduct falls outside of the spirit of the Three Strikes law. The People did not file an opposition.

At sentencing the next day, the trial court heard defendant's *Romero* motion. The People argued that defendant fell within the spirit of the Three Strikes law, because he admitted to committing an act of violence in hitting the victim, he was a felon in possession of a gun, and he admitted to possessing and selling drugs. The prosecutor also read a version of the facts summarized in the opinion of a different panel of this court affirming the judgment in 2014, which detailed defendant's campaign of extortion against a woman in a neighboring apartment that included threats of violence, repeated demands for money, forced entry to her apartment, damage to her property, and an incident where defendant forced the victim to obtain a payday loan to give him money.[6] Defendant was convicted of first degree burglary (§ 492), extortion by force (§ 520), and receiving stolen property (§ 496), and served nine years and eight months in prison. Prior to the 2014 conviction, defendant was convicted in 2011 of misdemeanor domestic violence (§ 273.5)

---

[6] The probation report also included an extensive description of the victim's report to police in 2013 that "over the past several months, the defendant made numerous threats towards her, assaulted her, and took her property and cash from her."

6

and five felonies. Based on defendant's criminal record, the People urged the trial court not to strike the strike.

The trial court asked the People to address defendant's argument that, in light of the jury's verdict finding defendant not guilty of violent offenses and aggravating factors not true, the court could only consider the non-violent offenses for which defendant was convicted. The People responded that defendant had armed himself a short time after spending nine years and eight months in prison and admitted that he committed an act of violence, which the court could consider.

The trial court asked the defense to address defendant's use of a firearm he possessed illegally to shoot a dog. Defense counsel responded that defendant used the gun in self-defense after being bitten and fired the other shots into the ground. Defense counsel also noted that none of defendant's prior convictions involved a firearm offense. The prosecutor agreed defendant's prior conviction in 2014 did not involve a firearm.

The trial court ruled as follows: "The difficulty the Court is having on this *Romero* motion is in regards to those things the Court is bound to accept [, which] are the jury's actual findings of fact. [¶] Special Finding Number 2 states we find the allegation that the Defendant was armed with or used a weapon at the time of the commission to be not true. [¶] At the same time, the jury also found the Defendant guilty of being in possession of a firearm which is inherently inconsistent. [¶] The Court is bound to respect the jury's findings of fact, but where they conflict the Court is trying to give all deference it can to the jury's findings.

"But having heard all of the evidence at the same time and then deciding the *Romero* motion, the Court can use its discretion in looking at the totality of the circumstances submitted by [defendant], the totality of his record, and giving all deference I can to the jury, it does appear to the Court that [defendant's] actions were serious and violent at the time that he was walking around with a firearm and approaching the dogs and the victim in this case. [¶] And those are the facts as admitted

7

by [defendant] himself. [¶] So I understand I have the discretion, but I am declining to use that discretion to strike the prior strike in light of the totality of the circumstances of both the prior and this case and [defendant's] record . . . ." (Italics added.)

After denying defendant's *Romero* motion, the trial court noted that defendant had waived a jury trial on the prior conviction, and the parties had stipulated that defendant suffered a prior conviction that made him a felon prohibited from owning a firearm. The court reviewed certified court records of defendant's prior conviction submitted by the People without objection by the defense and found true the allegation that defendant was convicted of first degree burglary in 2014. It then sentenced defendant to state prison for the midterm of three years doubled to six years by the strike on count four and imposed and stayed under section 654 the sentence on count three.

Defendant filed a timely appeal.

DISCUSSION

Defendant contends the trial court abused its discretion and should be reversed. We disagree and conclude the trial court properly determined that defendant did not fall outside the spirit of the Three Strikes law.

In *Romero*, the Supreme Court held that trial courts have discretion under section 1385 to dismiss a prior strike when a court finds the defendant falls, in whole or in part, outside the spirit of the Three Strikes law. (*Romero, supra*, 13 Cal.4th at pp. 529-530; *People v. Williams* (1998) 17 Cal.4th 148, 161.) In determining whether to exercise this discretion, the court considers: (1) the nature and circumstances of the defendant's present felonies; (2) the nature and circumstances of the defendant's prior strikes; and (3) the particulars of the defendant's background, character, and prospects for the future. (*Williams, supra*, at p. 161.)

We review a trial court's refusal to dismiss a prior strike under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*). We are guided by two fundamental precepts: (1) the burden is on the party attacking the

8

sentence to clearly show that the sentencing decision was irrational or arbitrary; and (2) it is insufficient to show that reasonable people could disagree about whether to strike a strike. (*Id.* at pp. 376-378.)

The scope of a trial court's discretion is always measured against the legal principles and policies governing the subject of its action. (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297; *Carmony, supra*, 33 Cal.4th at p. 377.) Thus, we are mindful that the Three Strikes law " 'was intended to restrict courts' discretion in sentencing repeat offenders.' " (*Carmony,* at p. 377.) It establishes a sentencing requirement to be applied in every case and "carefully circumscribes" the trial court's power to depart from it. (*Id.* at p. 378.) "In doing so, the law creates a strong presumption that any sentence that conforms to [the] sentencing norms [established by the Three Strikes law] is both rational and proper." (*Ibid.*)

In light of this presumption, a trial court abuses its discretion in failing to strike a prior felony conviction allegation only in limited circumstances, such as where the trial court was unaware of its discretion or considered impermissible factors in determining whether or not to dismiss a prior strike. (*Carmony, supra*, 33 Cal.4th at p. 378.) But where the trial court, aware of its discretion, " 'balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.' " (*Ibid.*) Only in " 'extraordinary' " circumstances, "where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme," will a trial court's failure to strike a prior conviction constitute an abuse of discretion. (*Ibid.*; *People v. Strong* (2001) 87 Cal.App.4th 328, 338, 343.)

Here, the record shows that the trial court considered the relevant factors described in *Willliams*, *supra*, 17 Cal.4th at page 161 and reasonably applied them to the facts.

In considering the circumstances and nature of the current offenses, the trial court focused on the contradiction between the jury's finding that defendant did not use a

9

firearm in committing a crime, yet found him guilty of possession of a firearm. Nevertheless, the trial court concluded defendant's conduct was serious and violent in that he admitted arming himself with a weapon it was illegal for him to possess when he went looking for the victim at the homeless encampment and did not hesitate to shoot at a dog that latched on to his shirt. This was a reasonable view of the facts underlying defendant's conviction for possession of a firearm. Section 29800 "presumes the danger is greater when the person possessing the concealable firearm has previously been convicted of [a] felony . . . ." (*People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1409 [discussing former § 12021 now § 29800].) Defendant's admitted use of a firearm—though, based on the jury's verdicts, not to commit attempted murder and assault—exemplified the danger of violence inherent in a felon being armed with a firearm. Even if a contrary conclusion might be reasonable, " ' " [a]n appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' " (*Carmony, supra*, 33 Cal.4th at p. 377.)

Turning to the nature and circumstances of defendant's prior strike, defendant argues that the prior crime was "not especially egregious." He attempts to blunt the disturbing facts recited in our prior opinion, *People v. Poynter* (Nov. 24, 2015, C076585) [nonpub. opn.], which were read into the transcript, by pointing out that our factual summary was based on testimony that went to charges of kidnapping, kidnapping to commit robbery, robbery, dissuading a witness, felon in possession of a firearm, and brandishing a firearm—charges on which the jury did not return guilty verdicts. We disagree. One who enters a home to commit extortion is guilty of burglary. (*People v. Ortega* (1992) 11 Cal.App.4th 691, 696.) The summary of facts in our prior opinion described defendant's forced entry into the victim's neighboring apartment, including by kicking in her door, to extort money from her. We said: "Defendant also started pushing his way into [the victim's] apartment without permission and demanding to borrow money. [The victim] gave defendant money on 'almost a daily basis,' explaining that she

10

felt she had no other choice. . . . . [¶] On [one] occasion, defendant kicked in her door and said that she could not stop him." (*People v. Poynter, supra*, C076585.) We do not agree these events are "not especially egregious."

The trial court's ruling did not expressly touch on defendant's background, character, and future prospects. However, section 1385 "does not require a court to 'explain its decision not to exercise its power to dismiss or strike' " a prior strike. (*Carmony, supra*, 33 Cal.4th at p. 376.) In terms of background, defendant argues that his drug use, beginning at the age of 10, is a mitigating factor, because it explains his criminal behavior when using drugs. However, any value attributable to this factor is diminished because defendant's longstanding drug problem, multiple parole violations for methamphetamine use, and his refusal to participate in drug treatment programs indicate that defendant's prospects for a crime-and-drug-free future are not promising. (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1143 ["defendant's drug problem may have little mitigating value where the problem is long-standing"].)

Defendant also argues that at the age of 38, he is less likely to commit crimes. But 38 years old is still relatively young. Moreover, the authority defendant cites, *In re Saldana* (1997) 57 Cal.App.4th 620, 624, pre-dated *Williams* and "thus was not informed by the relevant standard." (*People v. Strong, supra*, 87 Cal.App.4th at p. 342.) Post-*Williams*, it is clearly established that "middle age considered alone, does not remove a defendant from the spirit of the Threes Strikes law. Otherwise, those criminals with the longest criminal records over the longest period of time would have a built-in argument that the very factor that takes them within the spirit of the Three Strikes law—a lengthy criminal career—has the inevitable consequence—middle age—that takes them outside the law's spirit." (*Id.* at p. 345; see also *People v. Avila, supra*, 57 Cal.App.5th at p. 1144; *People v. Vazquez* (2021) 72 Cal.App.5th 374, 391.)

Defendant also argues his criminal record did not justify imposing a strike. As set forth in the probation report, before the 2014 strike, defendant had two felony drug

11

possession convictions (Health & Saf. Code, § 11350, subd. (a)), one in 2005 and another in 2006. He received five years' formal probation in both cases, and in both cases, violated probation in less than a year. Next, defendant had two felony car theft convictions (Veh. Code, § 10851, subd. (a)), one in 2007 and another in 2008. Defendant was sentenced to four years formal probation on the first conviction, which he violated in six months, and was sentenced to 16 months in state prison. On the second felony car theft conviction, defendant was sentenced to 16 months in state prison. After he was released, in 2009, defendant was convicted of forgery (§ 475, subd. (a)) and received a prison sentence of 16 months. In 2011, defendant was convicted of misdemeanor domestic violence (§ 273.5, subd. (a)). The trial court granted defendant three years of formal probation, which was followed by more probation violations. In 2014, defendant was convicted of the prior strike. He served nine years and eight months and was on parole at the time of his current crimes and arrest. In sum, defendant continually committed crimes resulting in multiple prison terms on multiple felony convictions, and, when granted probation, violated it. This history does not suggest defendant is outside the spirit of the Three Strikes law.

Defendant also argues for the first time on appeal that his prior strike was "remote." However, a prior strike conviction is not considered remote where the defendant " 'was incarcerated a substantial part of the intervening time and thus had little or no opportunity to commit' additional crimes." (*People v. Vasquez, supra*, 72 Cal.App.5th at p. 390.) In October 2013, defendant was arrested and booked into jail for the crime that led to his prior strike conviction in 2014, and his parole began in August 2021. Thus, defendant was free from incarceration for a total of 14 months before committing the instant offenses in September 2022. Therefore, the 2013 strike is not "remote" for purposes of the Three Strikes analysis. (*Ibid.*) Moreover, it is "highly significant" that defendant was still on parole at the time of the current offense, which shows that the prior conviction did not lead defendant to change his ways. (*Ibid.*; *People*

*v. Mayfield* (2020) 50 Cal.App.5th 1096, 1107 ["older strike convictions do not deserve judicial forgiveness unless the defendant has used them as a pivot point for reforming his ways"].)

On this record, we cannot say the circumstances argued by defendant are so " 'extraordinary' " that "no reasonable people could disagree that the [defendant] falls outside the spirit of the three strikes scheme . . . ." (*Carmony, supra*, 33 Cal.4th at p. 378.)

## DISPOSITION

The judgment is affirmed.

_____\s\_____,
Krause, J.

We concur:

\_\_\_\_\_\s\_____,
Robie, Acting P. J.

\_\_\_\_\_\s\_____,
Feinberg, J.